UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RADIANCE ALUMINUM FENCE, INC.,

           Plaintiff and Counter-Defendant,      Case Number 18-12605
v.      Honorable David M. Lawson

MARQUIS METAL MATERIAL, INC.,

           Defendant and Counter-Plaintiff.
_____/

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION

Plaintiff Radiance Aluminum Fence, Inc. seeks reconsideration of this Court's order dismissing its amended complaint on summary judgment and granting partial summary judgment on defendant Marquis Metal Material, Inc.'s counterclaim. Radiance contends that the Court made a mistake when it held that Radiance's failure to pay any amount for the first three shipments of aluminum (which caused it to exceed its credit limit) amounted to a "substantial breach" of the installment contract, justifying Marquis to withhold further shipments until payments were made. Radiance also argues that the Court disregarded its evidence when determining that no material fact question was presented by the record on Marquis's motion for partial summary judgment on Marquis's counterclaim. Radiance is mistaken on both counts. Its motion will be denied.

I.

Relief under a motion for reconsideration generally is reserved to cases where the moving party shows (1) a "palpable defect," (2) that misled the court and the parties, and (3) that correcting the defect will result in a different disposition of the case. E.D. Mich. LR 7.1(h)(3). A "palpable defect" is a defect which is obvious, clear, unmistakable, manifest, or plain. *Mich. Dep't of Treasury v. Michalec*, 181 F. Supp. 2d 731, 734 (E.D. Mich. 2002) (citations omitted). A motion for reconsideration is not intended as a means to allow a losing party simply to rehash rejected

arguments or to introduce new arguments. *See, e.g. Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) ("Thus, parties should not use [motions to reconsider] to raise arguments which could, and should, have been made before judgment issued.").

New arguments "raised for the first time in a motion for reconsideration at the district court generally [are] forfeited." *United States v. Huntington Nat'l Bank*, 574 F.3d 329, 331-32 (6th Cir. 2009). Old arguments re-presented will not justify reconsideration. *See* E.D. Mich. LR 7.1(h)(3) ("Generally . . . the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court."). Instead, the moving party must show that the Court made a mistake based on the record before it and rectifying the mistake would change the outcome. E.D. Mich. LR 7.1(h)(3).

A.

Radiance starts with the contention that the Court on its own improperly injected the issue of Radiance's non-payments as constituting a material breach of the installment contract, insisting that neither party raised that issue. Radiance misrepresents the record. Marquis raised Radiance's failure to pay first as an affirmative defense to Radiance's breach of contract action (arguing that the doctrine of estoppel precludes Radiance's claim "because it was Radiance's actions that caused the delay in Marquis's shipments," Counterclaim, ECF No. 8, PageID.36) and in its counterclaim (alleging that "Radiance breached the agreement by failing to remit timely payment to Marquis for the aluminum products purchased," *id.* at PageID.44). And in its response to Radiance's motion for summary judgment, Marquis argued that "Radiance substantially breached the contract" first by failing to pay for the first three container deliveries, Response to MSJ, ECF No. 72, PageID.1890; *see also*, Reply, ECF No. 82, PageID.2782, and asserted "in the alternative, Marquis

did not breach the parties' contract by stopping deliveries in May-June 2017 because Radiance had no credit left to cover any further deliveries," *ibid.*

Radiance next reargues its position that its payment failures amounted to nothing more than a minor breach of an installment contract, and therefore they cannot be considered a "substantial" breach. It asserts that all the law is on its side. This argument can be rejected as nothing more than a rehash of an issue already presented and argued by the parties and decided by the Court. E.D. Mich. LR 7.1(h)(3) ("Generally . . . the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court."). A brief comment is in order, however, on the authority that the plaintiff cites. Some of those cases shed light on the issue. But, contrary to the plaintiff's argument, they do not establish a categorical approach. Instead, "the determination of whether a breach is 'substantial' is 'inextricably tied to the particular facts of the case." *JD Norman Industries, Inc. v. Metaldyne*, *LLC*, No. 15-13863, 2016 WL 1637561, at \*6 (E.D. Mich. Apr. 26, 2016) (citing *Chrysler Int'l Corp. v. Cherokee Exp. Co.*, 134 F.3d 738, 742 (6th Cir. 1998) and *Baith v. Knapp-Stiles, Inc.*, 380 Mich. 119, 126, 156 N.W.2d 575, 578 (1968)).

Courts (including this Court) addressing this issue generally cite *McCarty v. Mercury Metal Craft Co.*, 372 Mich. 567, 574, 127 N.W.2d 340 (1964). In that case, the Michigan Supreme Court defined a substantial breach as one "where the breach has effected such a change in essential operative elements of the contract that further performance by the other party is thereby rendered ineffective or impossible, such as the causing of a complete failure of consideration . . . or the prevention of further performance by the other party." *Ibid.* (citations omitted). However, *McCarty* did not involve an installment contract. Rather, the court in that case held that the plaintiff's immediate termination of a commission-based sales contract, in violation of the contract

provision requiring 60 days' notice, was not a substantial breach barring the plaintiff's suit seeking unpaid commissions. *Id.*, 372 Mich. 567, 127 N.W.2d at 343.

Radiance cites *Jawad v. Hudson City Savings Bank*, 636 Fed. App'x 319 (6th Cir. 2016), as this Court did in its opinion. In that case, the plaintiffs stopped making payments on their mortgage, and in response, the defendant banks accelerated a mortgage debt and foreclosed on the property without giving the required notice of default. *Jawad*, 636 Fed App'x. at 320. The plaintiffs sued for breach of contract, and in defense, the banks claimed that the plaintiffs' payments were late. *Ibid.* The Sixth Circuit ruled that the late payments did not constitute a substantial breach. *Id.* at 322-323. But the court arrived at its ruling by focusing on the context of the parties' agreement: "In the [mortgage contract's] notice provision, the parties expressly contemplated breach by plaintiffs and agreed that, if plaintiffs breached the contract, the banks would provide notice prior to acceleration." *Id.* at 322. Thus, the Sixth Circuit held that "[a] breach contemplated by the language of the contract is unlikely to render performance impossible, especially when the contract provides for a contingency in the event of that breach." *Ibid.* That scenario is quite different than an installment contract for the sale of goods when serial payment deadlines were missed and no money at all was forthcoming. The essence of a sales contract is that the buyer pays for what it bought.

Radiance also heavily relies on several district court and out-of-circuit cases that the Court did not cite in its opinion. In *JD Norman Industries*, the court found that the late payment of invoices totaling .007% of a $38.2 million contract price for automotive parts, which were late by four days or less, did not constitute a substantial breach. *JD Norman Indus.*, 2016 WL 1637561, at *6. In *Eberspaecher N.A., Inc. v. Nelson Glob. Products, Inc.*, No. 12-11045, 2012 WL 435678, at *8 (E.D. Mich. Sept. 23, 2012), the court found that the plaintiff's late payments, which were

potentially pervasive and chronic, created a fact issue about who committed the first substantial breach of the parties' automotive supply contract. The court cited *Coupled Prods. LLC v. Component Bar Prods., Inc.*, No. 09–12081, 2012 WL 954646 (E.D. Mich. Mar. 21, 2012). In that case, the court ruled that the failure to pay invoices timely was not a substantial breach when the opposing party had unilaterally changed the payment terms of the contract from 60 days to full payment cash in advance. *Id.* at *2. In none of those cases was there a complete failure to pay at the time the seller suspended deliveries.

Radiance also cites, for comparison purposes, *Northern Helex Co. v. United States*, 455 F.2d 546 (Ct. Cl. 1972), although it is not clear why, since that case makes the point for Marquis. There, the government failed to make payments on an installment contract for delivery of helium in a "large amount over an extended period of time." *Id.* at 550. Unlike Marquis, the plaintiff in that case continued to make deliveries even after the government's prolonged nonpayment, because it had nowhere to store the helium it produced. But like Radiance, the government contended that the delinquency, without more, did not warrant the contractor terminating the contract later. The Court of Claims disagreed: "Perhaps mere delay in payment, for a while, would not be a material breach but there is a clear distinction between delay of that kind and a total failure to pay over many months." *Ibid.* The court concluded that "the latter sort of breach by the Government is material, just as it would be in the case of a private party." *Ibid.* The court found relevant that "[n]othing in the contract excused or palliated defendant's default." *Id.* at 125. The court had "in short, not the slightest doubt that the prolonged failure to pay large amounts was a material breach of the contract." *Ibid.*

The irony of that case is that the court had to address (and reject) an argument that the plaintiff's continued delivery of product amounted to a waiver of the timely payment provision of

the contract. *Id.* at 553-54. Either way, the question is whether "the seller exercised 'reasonable commercial judgment.'" *Id.* at 553. In this case, the Court determined that Radiance's nonpayment *was* a substantial breach of the sales installment contract. No reasonable person would require a seller to continue sending product to a nonpaying buyer when none of the first three installment deliveries had been paid for. Suspending deliveries, at least until the buyer put its financial house in order, could only be considered a prudent course under the facts in this case. And it might even be considered a legally required act of damage mitigation.

Moreover, a different ruling on the "substantial breach" issue would not change the result. The inescapable fact remains, as the Court noted, that Radiance accepted the nonconforming deliveries in 2017 without any objection or protest, a point Radiance did not address in its reconsideration motion. Radiance's acquiescence barred any claim that it had for the "late" May and June 2017 intended deliveries. *See* Mich. Comp. Laws § 440.2607(3)(a) ("The buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy"); *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 152 (6th Cir. 1983); *Johnson Controls, Inc. v. Jay Indus., Inc.*, 459 F.3d 717, 730 (6th Cir. 2006); *see also* Mich. Comp. Laws §400.2612 ("the aggrieved party reinstates the [installment] contract if he accepts a nonconforming installment without seasonably notifying of cancellation or if he . . . demands performance as to future installments").

B.

Next, Radiance argues that the Court did not abide case law interpreting Federal Rule of Civil Procedure 56(a) that directs district courts to look at the facts in the record in the light most favorable to the non-moving party. It identifies three instances where, it believes, material fact disputes should have precluded a finding for Marquis: (1) the Court should have accepted as true

Matthew Isaacs's testimony that the contract's payment term had been modified orally to once per month instead of dismissing it as "self-serving"; (2) the Court should not have concluded that Isaacs understood that the terms and conditions and the credit agreement applied to all of his orders, because there was no credit agreement, but rather a credit application; and (3) the Court should have given some weight to Michael Falconer's emails and testimony stating that Radiance was approved for a $300,000 line of credit.

It is true that the Court characterized as self-serving Isaac's testimony about modifying the payment term of the installment contract. But the Court did not dismiss it for that reason. Instead, the Court determined that Isaac's testimony on that point, which was self-contradictory and equivocal, *see* Isaacs Dep., ECF No. 63-3, PageID.1173-74, did not measure up to the clear-and-convincing threshold that is required to establish a contract modification under the Uniform Commercial Code (UCC), *Quality Prods. & Concepts Co. v. Nagel Precision, Inc.*, 469 Mich. 362, 372, 666 N.W.2d 251, 257-58 (2003). The Court also held that the contract was subject to the Statute of Frauds, and therefore any modification had to be supported by a writing. *See* Mich. Comp. Laws §§ 440.2201, 440.2209(3). There was no writing evidencing a modification of the contract payment term; Isaac's testimony on that issue, therefore, was irrelevant.

It is not clear why Radiance believes a palpable error arose from the finding that Isaacs understood that the terms and conditions and the credit agreement applied to all of his company's orders. Perhaps it is an attempt to discredit the contention that the purported credit line imposed a limit on Radiance's deliveries, an argument that, when spun out to its logical end, would lead to the conclusion that Radiance had an open, unlimited line of credit, bounded only by the obligation to pay invoices within 45 days. That inference is unreasonable, and it is contradicted by Isaac's own testimony that he understood that all of his purchases were cabined by the credit cap. *See*

Isaacs dep., ECF No. 63-3, PageID.1175-76. No error can be found in the Court's rulings on that score, palpable or otherwise.

That leads to Radiance's third instance of alleged improper fact finding, that the Court did not give due accord to the $300,000 credit line Radiance enjoyed. But even a casual reading of the Court's opinion shows that factual credit was given where credit was due. When the Court held that the undisputed facts showed that Radiance exceeded its credit limit by failing to make any payment on the first three shipments, $300,000 was found to be the operative credit level. And, as stated before, any argument that the parties' credit agreement did not impose a limit on Radiance's purchases is contradicted by Isaacs's own testimony. Isaacs dep., ECF No. 63-3, PageID.1175-76.

II.

Radiance has not shown that the Court made any error in its order on the parties' cross motions for summary judgment.

Accordingly, it is **ORDERED** that the plaintiff's motion for reconsideration (ECF No. 140) is **DENIED**.

                                                  s/David M. Lawson
                                                  DAVID M. LAWSON
                                                  United States District Judge

Dated: September 1, 2020